UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RECKITT BENCKISER LLC,** | Civ. No. 16-729 (KM) |
| Plaintiff, | **OPINION** |
| v. | |
| **COTIVITI, LLC and COST & COMPLIANCE ASSOCIATES, LLC,** | |
| Defendants. | |

**MCNULTY, U.S.D.J.:**

    The plaintiff, Reckitt Benckiser LLC, engaged Connolly, a division of defendant Cotiviti, LLC, and defendant Cost & Compliance Associates, LLC ("CCA"), to provide recovery audit services, *i.e.*, to identify and recover overpayments to vendors. Reckitt brought this action alleging that Cotiviti and CCA breached the parties' agreements and committed fraud. This matter comes before the Court upon the motions of Cotiviti (ECF no. 18) and CCA (ECF no. 19) under Fed. R. Civ. P. 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted. For the reasons stated herein, the motions to dismiss will be granted as to the fraud claims, and denied as to the contract claims.

**I.    THE COMPLAINT**

    I summarize the allegations of the Complaint, which are accepted as true for purposes of these motions only.

    Reckitt manufactures and distributes consumer health, hygiene, and home products. (Complaint, ECF no. 1-1 ("Cplt.") ¶¶ 13–14) In 2004, Reckitt entered into an agreement with Connolly, which is now a division of defendant

1

Cotiviti. Connolly agreed to provide audit services to determine whether Reckitt was entitled to recover rebates or overpayments from its vendors. (Cplt. ¶ 17) Under the agreement, Connolly would audit invoices and disbursements. It would identify overpayments, submit claims to Reckitt for processing, and prepare claim letters for Reckitt to send to the relevant vendors. (Cplt. ¶¶ 19–20) Connolly was entitled to a contingency fee based on a percentage of amounts recovered. (Cplt. ¶ 21) On February 14, 2013, Connolly assigned the agreement to a newly created entity, CCA. (Cplt. ¶¶ 23–25)

Reckitt discovered that Connolly/CCA had been claiming commissions for recoveries that were not obtained as a result of their audits. For example, Connolly took a commission of $245,000 for approximately $700,000 in rebates that Reckitt had independently obtained by contract with the vendor. (Cplt. ¶ 28) Another vendor submitted a credit memo to Reckitt on February 15, 2011, but later, on April 14, 2011, Connolly submitted a $102,837.41 claim for recovery. (Cplt. ¶ 29) Other claims were not properly documented. Reckitt's review has resulted in a determination that a significant number of payments obtained by Defendants were unwarranted under the terms of the Agreement. (Cplt. ¶¶ 31, 32)

Defendants, in violation of the Agreement, allegedly violated Reckitt's rules regarding "safety of persons and property" by establishing an improper relationship with a Reckitt employee who had control of relevant financial information. (Cplt. ¶¶ 33–34) One of Defendants' agents, Bierman, was "frequently abusive" in his contacts with vendors and falsely represented himself to be an employee of Reckitt.

The Complaint alleges five causes of action:

Count I: Breach of Contract Against Cotiviti. This count is based on Connolly's receipt of fees to which it allegedly was not entitled.

Count II: Breach of Contract Against CCA. This count is based on similar allegations post-dating the assignment of the agreement to CCA.

Count III: Breach of the Covenant of Good Faith and Fair Dealing Against Cotiviti and CCA. This count alleges that the receipt of unwarranted commissions was in bad faith.

Count IV: Common Law Fraud. This count essentially alleges that Defendants made false representations that they had identified recoveries, when in fact the overpayments had been identified by Reckitt.

Count V: New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1 *et seq.* This count alleges that the conduct alleged against Defendants constituted an unconscionable commercial practice and deception in connection with the sale of merchandise.

## II. APPLICABLE STANDARD

Defendants have moved to dismiss the complaint. Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss, a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ("reasonable inferences" principle not undermined by later Supreme Court *Twombly* case, *infra*).

Fed. R. Civ. P. 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also*

3

*Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678 (2009).

For claims of fraud, Rule 9(b) imposes a heightened pleading standard, over and above that of Rule 8(a). Specifically, it requires that "in all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). That heightened standard requires the plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (internal quotation and citation omitted). "Malice, intent, knowledge, and other conditions of a person's mind," however, "may be alleged generally." Fed. R. Civ. P. 9(b).

In general, Rule 9(b) requires that a complaint allege the "who, what, when, where and how of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276–77 (3d Cir. 2006). The standard of sufficiency, however, must be applied with sensitivity to the context:

> [Plaintiffs] need not, however, plead the "date, place or time" of the fraud, so long as they use an "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." The purpose of Rule 9(b) is to provide notice of the "precise misconduct" with which defendants are charged and to prevent false or unsubstantiated charges. Courts should, however, apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants.

*Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998) (quoting *Seville Indus. Machinery v. Southmost Machinery*, 742 F.2d 786, 791 (3d Cir. 1984) and citing *Christidis v. First Pennsylvania Mortg. Trust*, 717 F.2d

96, 99 (3d Cir. 1983)). *See also Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir.1989) ("even under a non-restrictive application of the rule [9(b)], pleaders must allege that the necessary information lies within defendants' control, and their allegations must be accompanied by a statement of facts upon which the allegations are based.") (quoted in *F.D.I.C. v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994)).

## III. DISCUSSION

### A. Count V – NJCFA

Defendants move to dismiss Count V of the complaint, a claim under the NJCFA. That Act provides:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

N.J.S.A. 56:8-2. Defendants argue that the Complaint fails to allege that this was a transaction involving the sale of "merchandise" or that these sophisticated, corporate audit services were sold to the general public. Finally, the Defendants argue that Count V lacks the requisite factual specificity.

#### *"Merchandise" sold "to the public"*

The NJCFA defines "merchandise" very broadly as "any objects, wares, goods, commodities, services, or anything offered, directly or indirectly to the public for sale." N.J. Stat. Ann. § 56:8-1.[1] The NJCFA is designed to "protect consumers who purchase goods or services generally sold to the public at large," in other words, "products and services sold to consumers in the popular sense." *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 514 (3d Cir. 2006) (citing

---

[1] Both goods and services are covered; the parties do not attempt any categorization.

*Marascio v. Campanella*, 689 A.2d 852, 857 (N.J. Super. Ct. App. Div. 1997) and *Arc Networks, Inc. v. Gold Phone Card Co.*, 756 A.2d 636, 637 (N.J. Super. Ct. App. Div. 2000)) (internal quotations omitted). The NJCFA is not confined, however, to items on the shelves of retail stores. It has been held to apply, for example, to the sale of merchandise to businesses in their capacities as end users. *Hundred East Credit Corp. v. Eric Shuster Corp.*, 515 A.2d 246, 249 (N.J. Super. Ct. App. Div. 1986) (finding that "unlawful practices thus can victimize business entities as well as individual customers"); *Dreier Co., Inc. v. Unitronix Corp.*, 527 A.2d 875, 882 (N.J. Super. Ct. App. Div. 1986) (finding sale of custom programmed software to business entity was within scope of NJCFA). "It is the character of the transaction, not the identity of the purchaser, which determines whether the CFA is applicable." *Finderne Mgmt. Co., Inc., v. Barrett*, 955 A.2d 940, 954 (N.J. Super. Ct. App. Div. 2008).

The consumers of merchandise need not be "average consumers"; the statute may also cover merchandise that is "expensive, uncommon, or only suited to the needs of a limited clientele." *Prescription Counter v. Amerisource Bergen Corp.*, 2007 WL 3511301, at *14 (D.N.J. Nov. 14, 2007). If the purchaser obtains goods and services on its own account, the purchase may be covered by the NJCFA. *Id.* (distinguishing merchandise used in the course of business from that which is not, such as items which are purchased for resale, designs, and franchises); *see also Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 545 (D.N.J. 2013). Defendants identify other factors relevant to the coverage of the NJCFA: "the sophistication of the parties to the transaction, whether the parties negotiated before entering into the transaction and the complexity of the transaction itself." (Cotiviti Br. at 9, citing *Papergraphics Int'l, Inc. v. Correa*, 389 N.J. Super. 8, 13–14 (App. Div. 2006))

Defendants' contentions are by no means frivolous. But the issue of whether Defendants' services constituted merchandise offered to the public presents factual issues that exceed the scope of a motion to dismiss. These services may be standard ones, offered to multiple customers on similar terms;

6

or they may be wholly unique, negotiated on an individual basis between sophisticated entities; or they may lie somewhere on a continuum between those two extremes. For now, I find that this element of the NJCFA claim has been sufficiently alleged; resolution of Defendants' objections must await summary judgment or trial.[2]

**Specificity**

Where the NJCFA claim falls short is in the specificity of its facts. At least to the extent that the NJCFA overlaps traditional fraud, it is subject to the heightened pleading requirements of Rule 9(b). "A plaintiff must allege the 'who, what, when, where, and how' of" a NJCFA claim. *Crozier v. Johnson & Johnson Consumer Companies, Inc.*, 901 F. Supp. 2d 494, 506 (D.N.J. 2012) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004)); *F.D.I.C. v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994). "[T]o plead a viable Consumer Fraud Act claim, Plaintiff must identify each statement and/or omission made by Defendant . . . that he alleges violates the statute and plead with particularity the basis upon which he contends that such statement and/or omission is false or misleading. As to the latter, facts, and not mere conclusions or speculative assertions, must be alleged." *Hodges v. Vitamin Shoppe, Inc.*, No. CIV.A. 13-3381 SRC, 2014 WL 200270, at *5 (D.N.J. Jan. 15, 2014).

This complaint does not come close to meeting that standard. Indeed, even under the usual Rule 8 standards, I would probably find that Count V lacks the requisite specificity to set forth a fraud claim.

---

[2]     As an example of what I mean, consider one of the cases cited by Defendants, *Princeton Healthcare System v. Netsmart New York, Inc.*, 29 A.3d 361 (N.J. Super. Ct. App. Div. 2011). That New Jersey case found a contract for the installation of a computer software program to be outside the scope of the NJCFA. Those parties, however, presented their contentions on a motion for summary judgment, having developed a factual record. For example, there was evidence that the plaintiff sought proposals for an upgraded computer system, worked for years on a process to evaluate the proposals, worked with the defendant to create the computer software, and engaged in "lengthy negotiations" over the contractual terms. That process culminated in the design of a "custom-made program to satisfy [plaintiff's] unique needs." *Id.* at 474. Whether such factors exist here cannot be established without the benefit of discovery. *See also Stockroom, Inc.*, 941 F. Supp. 2d at 545.

The complaint alleges "false representations" and describes their general nature. It does not state who made them, when, where, or how. The complaint cites two examples of claims for rebates to which Defendants were not entitled. (Cplt. ¶¶ 28, 29) One contains no identifying information at all, beyond a dollar amount. The other gives dates, but no names or other particulars. Then follows a general allegation that Reckitt's "review" had resulted in a "determination" that there were a significant number of similar cases. (Cplt. ¶¶ 31, 32)

That will not do. Count V is dismissed for failure to state a claim. Because this is a defect of pleading, rather than a fundamental legal defect, this dismissal is without prejudice to the submission of a proposed amended complaint within 30 days.[3]

### B.     Count IV – Common Law Fraud

For similar reasons, I will grant the motion to dismiss Count IV, which alleges the common law tort of fraud based on the same facts. To establish common law fraud, a plaintiff must prove: (1) a material misrepresentation of a presently existing or past fact, (2) knowledge or belief by the defendant of its falsity, (3) an intention that the other person rely on that misrepresentation, (4) reasonable reliance thereon by the other person, and (5) resulting damages. *See Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997). Fraud is, of course, subject to the pleading requirements of Rule 9(b).

The complaint does not plead with specificity that anyone made a false representation to Reckitt. Again, the complaint speaks in generalities about the nature of the falsehoods, but without any of the necessary who, what, when, where, and how. Neither the speaker nor the hearer is identified. Dates and particulars are absent.

Count IV, too, is dismissed for failure to state a claim, without prejudice to the submission of a proposed amended complaint within 30 days.

---

[3]     I recognize that this complaint was removed from state court, where plaintiff would naturally have filed it without regard to federal pleading standards. That is another reason for permitting amendment.

### C. Counts I, II and III – Breach of Contract

Under New Jersey law, a breach of contract claim requires proof of three elements: (1) the existence of a valid and enforceable contract, (2) a breach of that contract, and (3) damages. *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007); *accord Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007).

The complaint attaches a written contract. It alleges breach, in that the Defendants are alleged to have claimed commissions to which they were not entitled under the terms of the contract.[4] And it alleges damages, to the tune of more than $2 million. Those are adequate allegations.

Count III alleges that Defendants breached the covenant of good faith and fair dealing that is implied in every contract. *See generally Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575 (N.J. 1997). (I read this as an alternative to the main theory that Defendants breached the express terms of the contract.) That implied covenant dictates that a party, even if it does not breach an express term, cannot act in bad faith to interfere with the other's ability to enjoy the fruits of the contract. *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244 (2001). The complaint alleges, *inter alia*, that Defendants, although they literally submitted the necessary documentation in some cases, did it in such a way as to defeat the spirit of the contract, which was that Defendants should profit only to the extent they found hidden overpayments.

Defendants offer an alternative interpretation of the contracts, argue that Reckitt should have disapproved any submissions it deemed inadequate, and so forth. These are factual matters that must await discovery.

Counts I, II, and III adequately plead the elements of breach of contract, and the motion to dismiss them will be denied.

---

[4] It also alleges, rather vaguely, that Defendants' agent entered into an "improper" relationship with an employee, was "abusive," and so forth. Those allegations are not essential to a ruling sustaining these Counts, so I set them aside.

## **CONCLUSION**

For the foregoing reasons, the motions to dismiss are denied as to Counts I, II, and III, and granted as to Counts IV and V without prejudice to the submission of a proposed amended complaint within 30 days.

Dated:   Newark, NJ
         October 3, 2016

                                        _____
                                        **Kevin McNulty**
                                        **United States District Judge**