NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RECKITT BENCKISER LLC,<br><br>Plaintiff,<br><br>v.<br><br>COTIVITI, LLC and COST &<br>COMPLIANCE ASSOCIATES, LLC,<br><br>Defendants. | Civ. No. 16-729 (KM)<br><br>OPINION |

**MCNULTY, U.S.D.J.:**

This matter comes before the Court on defendants' motions (ECF nos. 40, 41) to dismiss Counts IV and V of the Amended Complaint. For the reasons stated herein, the motions will be denied.

The plaintiff, Reckitt Benckiser LLC ("Reckitt"), engaged Connolly, a division of defendant Cotiviti, LLC ("Cotiviti"), and defendant Cost & Compliance Associates, LLC ("CCA"), to provide recovery audit services, *i.e.*, to identify and recover overpayments to vendors. Reckitt brought this action alleging that Cotiviti and CCA breached the parties' agreements and committed fraud. Cotiviti and CCA previously moved under Fed. R. Civ. P. 12(b)(6) to dismiss the original complaint for failure to state a claim upon which relief can be granted. By Opinion ("Op.", ECF no. 30) and Order (ECF no. 31), I granted those motions to the extent of dismissing Count IV (fraud) and Count V (NJ Consumer Fraud Act), without prejudice. Because I write for the parties, familiarity with my prior Opinion is assumed.

The nature of the fraud is that Connolly/CCA allegedly claimed commissions for recoveries that were not obtained as a result of their audits. The grounds for dismissal were that Counts IV and V failed to plead fraud with the specificity required by Fed. R. Civ. P. 9(b):

> The complaint alleges "false representations" and describes their general nature. It does not state who made them, when, where, or how. The complaint cites two examples of claims for rebates to which Defendants were not entitled. (Cplt. ¶¶ 28, 29) One contains no identifying information at all, beyond a dollar amount. The other gives dates, but no names or other particulars. Then follows a general allegation that Reckitt's "review" had resulted in a "determination" that there were a significant number of similar cases. (Cplt. ¶¶ 31, 32)

(Op. 8)

In response to the dismissal, Reckitt filed its First Amended Complaint (referred to as the Amended Complaint and cited as "1AC"). The Amended Complaint adds allegations in an attempt to supply the specificity found lacking in the original version. In the defendants' view, that effort has failed. Cotiviti (ECF no. 40) and CCA (ECF no. 41) move to dismiss Counts IV and V of the Amended Complaint for failure to state a claim upon which relief may be granted. Reckitt has filed a brief in opposition. (ECF no. 44) Defendants have filed replies. (ECF nos. 45, 46)

**ALLEGATIONS OF THE AMENDED COMPLAINT**

I focus here on the allegations that appear for the first time in the Amended Complaint.

A. <u>Connolly/CCA Submits Invalid Claims for Commissions</u>

Reckitt discovered that Connolly/CCA had been claiming commissions for recoveries that were not obtained as a result of their audits, but rather, that Reckitt's vendors or Reckitt's employees had identified without Connolly/CCA's aid. (AC ¶ 31-33) Reckitt determined that on nearly 100 occasions, CCA/Connolly had submitted claims for commissions to Reckitt without the proper supporting documentation and subsequently collected commissions to

2

which it was not entitled under the terms of the parties' agreement. (*Id.* ¶ 36–38) Reckitt alleges that if CCA/Connolly had disclosed certain information to Reckitt, Reckitt would have realized that CCA/Connolly's claims were not valid. (*Id.* ¶ 39)

In addition to adding certain details about the parties' agreement, Reckitt adds two new sections to the amended complaint that did not appear in the original complaint: First, Reckitt attaches as Exhibit D a list of the nearly 100 instances in which it claims CCA/Connolly wrongfully claimed and received commissions. (AC ¶ 38, Ex. D) The list identifies each claim by vendor, date, and amount, for the February 2011 through December 2013 period. Second, within the body of the amended complaint, Reckitt describes in more detail 20 of these instances as a "representative sample" of the defendants' allegedly fraudulent transactions. (*Id.* ¶ 40) According to Reckitt, these 20 instances led to Reckitt paying "at least" $369,295.33 in commission payments to CCA/Connolly. (*Id.*; *see generally* ¶¶ 41–108)

I summarize here three of the twenty representative samples. In the first, one of Reckitt's vendors, AC Nielson Company ("Nielson") was the first to discover that on October 1, 2013, it had received an $11,459.87 overpayment from Reckitt. (AC ¶ 41) A Nielson representative emailed Bierman on October 18, 2013, stating that a duplicate invoice "was sent to you in error" and instructing that Reckitt should "deduct the payment [] while paying your future invoices." (*Id.* ¶¶ 42–43) Bierman responded: "[p]roforma invoices always seem to cause difficulty in our system," and "[o]ne of these days we'll figure out a solution." (*Id.* ¶ 44) On October 20, 2013, CCA submitted a claim seeking a commission in connection with this $11,459.87 recovery. (*Id.* ¶ 45)

Reckitt alleges this claim was improper because Nielson "had identified the overpayment itself and attempted to bring the overpayment to [Reckitt's] attention directly,"—that is, based on the pronouns in the October 18 email, Reckitt presumes the Nielson representative thought he was communicating

with a Reckitt employee and Bierman "attempted to actively reinforce that misimpression." (*Id.* ¶ 44–45)

In the second representative sample, by emails sent on June 27, 2013 and July 30, 2013, another of Reckitt's vendors, Cegedim, notified a Reckitt employee directly that Reckitt had made four overpayments to Cegedim totaling $62,086.14. (AC ¶ 46) The Reckitt employee worked with Cegedim to secure Reckitt's reimbursement, which it received by check on September 16, 2013. (*Id.* ¶ 47) At some point on or between September 26, 2013 and November 13, 2013, Bierman asked the Reckitt employee to forward to him the email chain in which the Reckitt employee and Cegedim's representatives discussed the four overpayments. (*Id.* ¶ 48) The Reckitt employee complied on November 13, 2013, forwarding to Bierman a chain that included the June 27, 2013 and July 30, 2013 emails and an email in which Cegedim confirmed its issuance of the reimbursement check. (*Id.* ¶ 49)

On November 16, 2013, CCA submitted a claim to Reckitt seeking a commission for Reckitt's $62,086.14 recovery from Cegedim. Reckitt alleges this was improper because CCA neither identified the overpayments nor played any role in securing Reckitt's reimbursement. (AC ¶ 50)

In the third, on July 26, 2012, Connolly submitted a claim for commission to Reckitt in connection with a duplicate payment for $13,835.50 it determined Reckitt had made to the vendor LMC Industries ("LMC"). (AC ¶ 71) After Connolly submitted its commission claim, however, an LMC representative emailed Bierman on August 4, 2012, informing him that Reckitt actually still owed LMC $13,835.50. (*Id.* ¶ 72) Bierman responded the same day: "we will process this invoice which in effect reverses the deduction." (*Id.*) Reckitt alleges Connolly never withdrew its July 26, 2012 commission claim, despite the recovery on which it was based having been canceled. (*Id.* ¶ 72)

The rest of the representative sample similarly describe incidents in which Connolly or CCA submitted claims for commissions in connection with recoveries Reckitt never actually received and/or which CCA/Connolly had no

role (or in one case, possibly only a redundant role (*see* AC ¶¶ 101–108)) in discovering and collecting.

### B. Bierman Violates Reckitt's Rules of Conduct

Reckitt also alleges that the defendants violated Reckitt's rules regarding "safety of persons and property" by establishing an improper relationship with a Reckitt employee who had control of relevant financial information. (AC ¶¶ 109–110) This Reckitt employee allegedly "provided significant information to Bierman," which in turn, "resulted in many of the improperly claimed commissions." Moreover, Reckitt alleges that Bierman was "frequently abusive" in his contacts with vendors and falsely represented himself to be an employee of Reckitt. (*Id.* ¶¶ 111–113)

## DISCUSSION

I do not repeat the well-established standards governing this motion to dismiss under Fed. R. Civ. P. 12(b)(6), 8(c), and 9(b), which are stated in my prior Opinion. (Op. Section II) Nor do I repeat the substantive elements of a cause of action for common law fraud (*see* Op. Section III.A), or for a violation of the New Jersey Consumer Fraud Act ("NJCFA") N.J. Stat. Ann. § 56:8-1 *et seq.* (*see* Op. Section III.B). They are incorporated here by reference.

Counts IV and V of the Amended Complaint, as before, adequately allege the legal elements of fraud or a violation of the NJCFA. The original Complaint, I wrote, stated the general nature of the alleged fraudulent scheme or the unconscionable commercial practices, but fell short of the Rule 9(b) requirement that it allege the who, what, when, where, and how:

> At least to the extent that the NJCFA overlaps traditional fraud, it is subject to the heightened pleading requirements of Rule 9(b). "A plaintiff must allege the 'who, what, when, where, and how' of" a NJCFA claim. *Crozier v. Johnson & Johnson Consumer Companies, Inc.*, 901 F. Supp. 2d 494, 506 (D.N.J. 2012) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004)); *F.D.I.C. v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994). "[T]o plead a viable Consumer Fraud Act claim, Plaintiff must identify each statement and/or omission made by Defendant . . . that he alleges violates the statute and plead with particularity the basis upon which he contends that

such statement and/or omission is false or misleading. As to the latter, facts, and not mere conclusions or speculative assertions, must be alleged." *Hodges v. Vitamin Shoppe, Inc.*, No. CIV.A. 13-3381 SRC, 2014 WL 200270, at *5 (D.N.J. Jan. 15, 2014).

(Op. 7)

That deficiency has been remedied in the Amended Complaint. In addition to describing the nature of the fraud or unconscionable commercial practice—claiming commissions for recoveries that were not obtained as a result of CCA's audits—the Amended Complaint specifies the particular commissions involved. It alleges certain sample transactions. (AC ¶¶ 41–108). More pertinently, attached to the Amended Complaint as Exhibit D is a table, entitled "Fraudulent Commission Claims submitted By Defendants...." ("Table", ECF no. 34 at pp. 45–49)

The Table contains 95 items. Here is a sample, consisting of the title, column headings, and the first of the Table's 95 lines:

Fraudulent Commission Claims submitted By Defendants Between February or 2011 and December of 2013 that Plaintiff Reckitt Benckiser Has So Far Identified.

| ClaimDate | ClaimNum | Vendor Name | ClaimCode | Recovered Amt |
|---|---|---|---|---|
| 4/27/2012 | 1012 | Pearce Wellwood | Statement Review | 37,005.24 |
| [etc.] | | | | |

Now it is true, of course, that the Amended Complaint does not go through each of the 95 items, identify the conversations or dealings that surrounded them, and so forth. Still less does it prove that these items were fraudulent. The defendants cogently argue that they have many factual defenses to what is alleged, and complain that the allegations are not "explained" or "defined."

Still, what is being alleged is now clear enough. The Amended Complaint, supplemented by the Table, states the date of each allegedly fraudulent transaction; its claim number; the name of the vendor involved; the claim

code;[1] and the dollar amount of each. That goes a long way toward supplying the missing who, what, when, where, and how. And sample allegations give some content to the alleged mechanics of the fraud. For a fraud allegedly consisting of multiple transactions over a substantial period of time, I find it sufficient.[2]

The motion to dismiss Counts IV and V will be denied. Their adequacy will be tested after appropriate discovery, on a motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the motions to dismiss Counts IV and V of the Amended Complaint are denied.

Dated:     Newark, NJ
           June 9, 2017

_____
**Kevin McNulty**
**United States District Judge**

---

[1] The "claim codes" include Statement Review, Erroneous Payment-Overpayment, Duplicate Payment – Invoice, Billback, Adjustment Made in Error, etc.

[2] The Amended Complaint alleges that the damages are approximately $2.9 million (Count IV) or over $2 million (Count V). The defendants' argument that the amount of damages has not been established with specificity need not be considered in this Rule 12(b)(6) context.

7